In the Matter of RETAIL LIQUOR STORES ASSOCIATION OF WESTERN NEW YORK, INC., Petitioner, *v.* DONALD S. HOSTETTER et al., Constituting the State Liquor Authority, et al., Respondents.

Supreme Court, Erie County, February 14, 1967.

*Flaherty & Shea* (*James P. Shea* of counsel), for petitioner. *Hyman Amsel* and *David M. Coffey* for State Liquor Authority, respondent. *Berg & Basil* (*Jerome Carrel* of counsel), for Park Edge Liquors, Inc., respondent. *Charles Tuppen* for *Courier Express, amicus curiæ.*

FRANK J. KRONENBERG, J. Retail Liquor Stores Association of Western New York, Inc. has instituted an article 78 proceeding seeking a judgment directing the State Liquor Authority to enforce the provisions of subdivision 19 of section 105 of the Alcoholic Beverage Control Law, by prohibiting Park Edge Liquors, Inc. from advertising the price of liquor.

Petitioner also seeks judgment pursuant to CPLR 6311 restraining Park Edge Liquors, Inc. from violating said section.

It is not denied that Park Edge Liquors, Inc. did advertise Shenley's, Seagrams 7 Crown, and Calverts Extra, as " all priced under $5.80 for full quart " and did insert similar advertisements in the local newspapers.

Park Edge Liquors, Inc. contends that the petitioning association as such is not an " aggrieved party " under the law. The court is satisfied that the petitioner is an " aggrieved party " under article 78. Certainly a licensee is an aggrieved party and joining several licensees into an association should not and does not deprive them of the rights they held individually.

The question before this court concerns itself with the interpretation and meaning of subdivision 19 of section 105 of the Alcoholic Beverage Control Law, which reads as follows:

" § 105. Provisions governing licensees to sell at retail for consumption off the premises.  *  *  *

" 19. No licensee authorized to sell beer or liquor at retail for consumption off the premises shall display any sign on or adjacent to the licensed premises, setting forth the price at which beer or liquor, or any brand thereof, is sold or offered for sale, or advertise such price in any other manner or by any other

means, except in the interior of the licensed premises." (Subd. 19 added by L. 1958, ch. 927, eff. July 1, 1958; amd. by L. 1964, ch. 531, § 15, eff. Oct. 31, 1964, which inserted " or liquor " in both instances.

In interpreting the law before it and in determining its meaning the court must examine and take cognizance of the following:

FIRST: What is the purpose of the law?

SECOND: What is the present trend and concept of the liquor law generally?

THIRD: What interpretations and precedent, if any, are available to the court?

A. The purpose of the law is embodied in section 2 of the Alcoholic Beverage Control Law and states in part: "It is hereby declared as the policy of the state that it is necessary *to regulate and control* the manufacture, sale and distribution within the state of alcoholic beverages *for the purpose of fostering and promoting temperance* in their consumption and respect for and obedience to law. It is hereby declared that such policy will best be carried out by empowering the liquor authority * * * *to determine whether public convenience and advantage will be promoted* by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby, subject only to the right of judicial review hereinafter provided for. *It is the purpose of this chapter to carry out that policy in the public interest.* The restrictions, regulations and provisions contained in this chapter are *enacted* by the legislature *for the protection, health, welfare and safety of the people* of the state." (Italics added.)

The purpose of the law is quite clear. The court takes special note of that portion italicized above: " to regulate and control * * * for the purpose of fostering and promoting temperance * * * to determine whether public convenience and advantage will be promoted * * * to carry out that policy in the public interest * * * enacted * * * for the protection, health, welfare and safety of the people ".

B. The *present trend and concept* of the liquor law was well espoused in the Governor's message to the Legislature (Feb. 10, 1964) and the Moreland Commission studies resulting in revision of the law. (L. 1964, ch. 531, § 15.)

The Governor's message asked " justice to the consumer " by putting an end to "the artificial devices " through which the liquor industry received " uniquely beneficial treatment at the consumer's expense," an example being the artificial distance requirements between retail premises concerning which " careful

studies now show that there is no discernible connection between temperate and lawful behavior and the establishment of such arbitrary and compulsory distances between package stores. These distance requirements have no present purpose except to restrict competition.'' (N. Y. Legis. Annual, 1964, pp. 484, 485, 487.)

C. The interpretations and precedent available to the court are limited and are not in accord. (See *Matter of Rosenblum* v. *Al's Liqs.*, 50 Misc 2d 1036 and *Matter of Cohen* v. *State Liq. Auth.*, 52 Misc 2d 111.)

The *Rosenblum* case (*supra*) held that an advertisement indicating '' priced under $——'' or '' pay less than '' a certain figure was a violation of subdivision 19 of section 105 of the Alcoholic Beverage Control Law, and the *Cohen* case (*supra*) concluded that '' Less than $——'', '' Priced under $——'' and '' Under $——'', did not violate the law.

However, both of said cases had one thing in common; they presumed that the advertising of prices in a newspaper was contrary to the statute and then went on to determine what constituted advertising of prices. A CLOSER LOOK AND EXAMINATION OF THE STATUTE MUST BE MADE IN THE LIGHT OF THE PURPOSE OF THE LIQUOR LAW, IN KEEPING WITH THE TREND PRECEDING AND FOLLOWING THE 1964 PRONOUNCEMENTS. (See *Matter of Hub Wine & Liq. Co.* v. *State Liq. Auth.*, 16 N Y 2d 112 [July 9, 1965].)

In the *Hub* case (*supra*) the Court of Appeals stated, referring to the Governor's message (1964) and the Moreland Report, that (p. 117): '' In the light of these highly pertinent studies and recommendations, the repeal of the distance requirements by the 1964 statute * * * must be seen as a reversal by New York of the public policy of artificial restrictions on competition in retail liquor selling and an asserted freeing of the Liquor Authority's power to eliminate these legally protected monopolies.'' (This was done at the same time the Legislature added '' or liquor '' to subdivision 19 of section 105 of the Alcoholic Beverage Control Law.) The Court of Appeals continued: '' The statute was not enacted in a vacuum. It was addressed to elimination of a specific public evil and more than literal ' distance ' between stores was involved in this change of policy. The change essentially was toward a free market for the sale of liquor in the interest of the consumer. The elimination of compulsory retail price maintenance by section 11 of the 1964 statute was a step in the same direction.''

In keeping with the purpose, trend, present concept and interpretation as above enumerated this court finds that there can be only one interpretation to subdivision 19 of section 105 of the

Alcoholic Beverage Control Law and *that is that the prohibitions voiced in said section are confined and limited to and apply only " on or adjacent to the licensed premises."*

In line with this interpretation note that subdivision 2 of section 101-bb of the Alcoholic Beverage Control Law recognizes the use of advertising by prohibiting the advertising of any item of liquor at a price below cost.

Note that in the statute (§ 105, subd. 19) the words " is * * * offered for sale " and " or advertise such price in any other manner or by any other means " are separated by a comma and not a semi-colon. Had a semi-colon been placed therein, the indication that all forms of advertising of prices, such as newspaper advertising, were prohibited, would be more readily acceptable.

In this court's opinion subdivision 19 of section 105 of the Alcoholic Beverage Control Law, in the light of the foregoing, and keeping in mind that section 101-bb of said law implies that advertising *above* cost price is permissible, indicates that: " No licensee * * * shall display any sign on or adjacent to the licensed premises, setting forth the price at which beer or liquor * * * is sold * * * or advertise such price in any other manner or by any other means [on the premises or adjacent thereto, e.g., such as the use of sound equipment or the dispensing of handbills adjacent to the premises] except in the interior of the licensed premises."

Any other interpretation would be in direct conflict with the purpose of the law and the recent enactments and would act to vitiate the statute (1964) eliminating compulsory retail price maintenance; it would prejudice the restoration of the free market espoused by the Moreland Commission; it would prevent " justice to the consumer " and continue " the artificial devices " through which the liquor industry received " uniquely beneficial treatment at the consumer's expense."

Consequently, since there was no violation of the law by the respondent Park Edge, and thus no violation to be enforced by the Liquor Authority, the petitioner's motions must be and hereby are denied and its applications dismissed.